HILL HOTEL COMPANY, APPELLEE, V. VINCENT B. KINNEY, COMMISSIONER OF STATE DEPARTMENT OF LABOR, ET AL., APPELLEES: JOHN F. ELMORE, APPELLANT.

295 N. W. 397

FILED DECEMBER 20, 1940. No. 30878.

*Lee & Bremers, Harold E. Pace* and *Samuel T. Ansell,* for appellant.

*Leon, White & Lipp, John E. Sidner* and *R. W. Mc-Namara, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

ROSE, J.

This is a proceeding under the unemployment compensation law. Comp. St. Supp. 1939, secs. 48-701 to 48-721.

John F. Elmore presented to the unemployment compensation division of the department of labor a claim for unemployment benefits chargeable against the account of the Hill Hotel Company. The claim contained the statement that claimant, a professional musician, with three other musicians, performing under the leadership of Bobby Bowman, had, as employee of the hotel company, furnished

music from May, 1938, until January, 1939. The claim was resisted on the grounds that claimant was not an employee of the hotel company and that the music was furnished by Bowman, an independent contractor. The appellate tribunal of the unemployment compensation division of the Nebraska department of labor allowed the claim and the hotel company appealed to the district court for Douglas county where the allowance was reversed and the claim disallowed. Elmore appealed to the supreme court.

Was claimant an employee of the hotel company within the meaning of the statute cited? This is the question presented by the appeal. Among the statutory provisions are the following:

"Services performed by an individual for wages shall be deemed to be employment subject to this Act unless shown to the satisfaction of the commissioner that—(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such service is either outside the usual course of the business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business." Laws 1937, ch. 108, sec. 2; Comp. St. Supp. 1939, sec. 48-702.

The provisions quoted from the Nebraska statute are found in the unemployment compensation law of Washington and in construing them the supreme court of that state said:

"In the Restatement of the Law of Agency, nine different items are recited as the principal elements to be considered in determining which relationship exists. In the enactment of the unemployment compensation statute, the legislature selected or picked out three elements to be considered. The legislature did not say, nor is the language

capable of that interpretation, that each of those elements must exist one hundred per cent. in order to establish the relationship of independent contractor. * * *

"The courts have never held that, in the determination of the relationship of independent contractor, there must be an absolute and complete freedom from control. The common-law test and the statutory test are the same. * * *

"In drafting the statute, the legislators attempted to codify the common law. They intended that the common-law test of employment relationship should likewise be the test under the unemployment compensation act." *Washington Recorder Publishing Co. v. Ernst,* 199 Wash. 176, 91 Pac. (2d) 718, 124 A. L. R. 667.

In that case the statute was considered at great length and many authorities cited. While there is a diversity of views among the courts on this subject and the opinions are not always unanimous, the weight of authority is that legislatures in enacting unemployment compensation statutes did not intend to depart from the common-law definition of "independent contractor." That definition was adopted by the legislature of this state in the enactment of the workmen's compensation law and by the Nebraska supreme court in construing it. One definition reads thus:

"An independent contractor is one who renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished." *Reeder v. Kimball Laundry,* 129 Neb. 306, 261 N. W. 562.

The following rule was adopted in the same case:

"In actual affairs an independent contractor generally pursues the business of contracting, enters into a contract with his employer to do a specified piece of work for a specific price, makes his own subcontracts, employs, controls, pays and discharges his own employees, furnishes his own material and directs and controls the execution of the work." See, also, *Prescher v. Baker Ice Machine Co.,* 132 Neb. 648, 273 N. W. 48; *Curry v. Bruns,* 136 Neb. 74,

285 N. W. 88; *Williams v. City of Wymore, ante,* p. 256, 292 N. W. 726.

In both the workmen's compensation law and the unemployment compensation law, the lawmakers legislated on labor problems and it should not be held without sound reasons that they intended to vary the status of independent contractors under the two intimately related statutes. The point in controversy was elaborately argued by counsel on each side with reference to statutes, opinions of courts and rulings of preliminary tribunals. It was earnestly insisted on behalf of claimant that the legislature had power to change the common law adopted in this state and make legislative definitions applicable to new enactments; that such power was exercised in the present instance, but that, even if the common-law tests are applied, claimant is entitled to an allowance for unemployment compensation under the facts. Though the argument is plausible, the rulings quoted from the supreme court of Washington seem to be based on better reasons and precedents and are adopted for the purpose of a decision on this appeal.

In writing, Bobby Bowman entered into a contract with the Hill Hotel Company to furnish for it in its hotel in Omaha music by four musicians, members of the Omaha Musicians' Association. The contract contains the following terms:

"Minimum of thirty hours per week; side man one dollar ($1) per hour; leader one dollar and fifty cents ($1.50) per hour; overtime at the rate of fifty cents per half hour; with two weeks' notice which may be given by either party. This contract to take effect June 24, 1938, and run until August 31, 1938, inclusive. Engagement to take place at Hill Hotel, Omaha, Nebraska.

"This contract is hereby extended to January 1st, 1939, under above conditions."

The contract was signed "Hill Hotel Co. by Sam Josephson" and by "Bobby Bowman," and approved by "Omaha Musicians' Association." Elmore was not a party to the contract. Music was furnished at the hotel by an organiza-

tion of musicians consisting of Bowman, the leader, Elmore, the claimant for unemployment compensation, and two other persons. Each played a musical instrument. The quartet was variously known as "Bobby Bowman's Band," and "Bobby Bowman's Orchestra," and "Bobby Bowman's Syncopators."

Elmore was a witness in his own behalf at the trial and testified among other things as follows, in substance: Went to work at the hotel about May 27, or 28, 1938, and worked there until the first part of January, 1939; played a guitar furnished by himself; had no written contract with any one for employment at the hotel; did not discuss employment with Josephson, hotel manager; received pay from Bowman, who paid the other musicians also; Bowman told him when to come to work; Josephson told Bowman when to play and when to quit; prior to May 28, 1938, never had a personal conversation with Josephson on the subject of playing at the hotel; Bowman furnished the music played; had authority to employ and dismiss; in common with other players Elmore bought his own uniform; was still playing with Bowman's Syncopators at the Cinema Club where he had been engaged three or four months.

Bowman testified that he entered into the contract with the hotel company in the form used by the musicians' union; that the union scale of wages was specified; that he received weekly from the hotel company pay for the four musicians and paid to each his share. He testified further: Josephson always gave him instructions, among them when to play and when to quit, manner of playing, type of music and times for intermission. Instructions to leader were passed on to other players. With the exception of a piano furnished by the hotel company, the musical instruments belonged to the players. They quit playing at the hotel when the contract for music there expired. Elmore was paid in full when he left. Later Bowman's Orchestra with some of the same players furnished music at different times and places but not continuously.

Sam Josephson testified he was manager of the Hill Hotel; employed the Bobby Bowman Band, did not at any time employ Elmore or talk to him about employment or compensation; did not talk to any member of the orchestra about what instruments to play or how to play them, or what uniforms to wear; did not criticize their work; had nothing to do with the personnel of the orchestra; told them the starting time and the quitting time; may have told Bowman to cut down the time for playing; might have cautioned them not to loiter around the place or disturb guests or employees of the hotel; paid Bowman by check for the entire cost of the music; never made any payment to any member of the band; never deducted anything for unemployment insurance; had nothing to do with rehearsals; had no oral or written contract with Elmore; never controlled any individual service of Elmore or of any other member of the band; did not discharge Bowman, the time limit under his contract having expired when he and the other musicians left.

In many material respects the evidence is not conflicting. In so far as the testimony of Elmore and Bowman conflicts with that of Josephson, credence was given to the latter by the trial judge who saw the witnesses and heard them as they testified. His ruling is adopted on appeal, since it is in harmony with the general import of circumstances and events disclosed without dispute. Josephson did not direct the technique of the musicians in the performance of their duties under the contract between Bowman and the hotel company or employ Elmore or direct him in the performance of his professional duties or discharge him. The relation of independent contractor was not disproved by evidence that Josephson instructed Bowman in regard to his duties under the contract, insisted on proper behavior in the hotel and cautioned the musicians not to loiter around the place or disturb guests or employees of the hotel. *Reeder v. Kimball Laundry*, 129 Neb. 306, 261 N. W. 562.

In the better view of the entire record, considered in

connection with the unemployment compensation law and with the weight of judicial interpretation, Elmore was not an employee of the Hill Hotel Company but was an employee of Bobby Bowman, an independent contractor. It follows that the claim for unemployment compensation was properly disallowed by the district court.

AFFIRMED.