### SPILLSON v. SMITH, Collector of Internal Revenue et al.

### No. 8609.

Circuit Court of Appeals, Seventh Circuit.

Feb. 7, 1945.

728

Samuel O. Clark, Jr., Sewall Key, Harold D. Cohen, Robert N. Anderson, and Louise Foster, Asst. Attys. Gen., Alexander M. Campbell, U. S. Atty., of Ft. Wayne, Ind., and James E. Keating, Asst. U. S. Atty., of South Bend, Ind., for appellants.

Raymond Brooks, of North Manchester, Ind., and Samuel R. Rosenthal, Sidney M. Perlstadt, and Morton Lane, all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from a judgment in favor of plaintiff in an action brought to recover unemployment taxes claimed to have been illegally collected from Berghoff Grill, Inc., plaintiff's predecessor in interest. The taxes were assessed under the Social Security Act of August 14, 1935, c. 531, §§ 901 and 907, 49 Stat. 639, 42 U. S.C.A. § 1101 et seq. It was tried under the Tucker Act, 28 U.S.C.A. § 41 (20), to a judge without a jury. The question is whether the musicians who furnished the music at the Berghoff Grill and Gardens, a restaurant operated by Berghoff Grill, Inc., in Fort Wayne, Indiana, were in its employ within the meaning of section 907 of the Act.

■ Sections 901 and 907 of the Act provide in substance that every employer of eight or more persons shall for the purpose of unemployment compensation pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to a designated percentage of the total wages payable by him with respect to employment during such calendar year; and that the term "employment" means any service, of whatever nature, performed within the United States by an employee for his employer, except certain types of employment not applicable in the case before us. The words "employer" and "employee" are not defined in the Act, but Treasury Regulations 90, covering the subject of employment under the Act, adopted as the test of the employer-employee relation the common law distinction between master and servant and independent contractor, the critical question being whether "the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished; that is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done," American Oil Co. v. Fly, 5 Cir., 135 F.2d 491, 492, or as was said in Radio City Music Hall Corporation v. United States, 2 Cir., 135 F.2d 715, 717: "The test lies in the degree to which the principal may intervene to control the details of the agent's performance." See also Texas Co. v. Higgins, 2 Cir., 118 F.2d 636.

■ The law is well established that the employer-employee relationship is to be judged by the presence or absence of no single evidentiary factor, but by an overall view, Anglim v. Empire Star Mines Co., 9 Cir., 129 F.2d 914, 917, and it has been held that the use of the word "employer" in contracts is not necessarily decisive of the relationship thereby created, Williams v. United States, 7 Cir., 126 F.2d 129, 133.

In the case before us, the facts briefly summarized are that on April 6, 1938, and May 12, 1939, the Carlton "Happy" Hauck Orchestra was engaged by Berghoff to furnish music at the Gardens, and contracts were executed on a form prescribed by the local union. Two contracts were executed by Carlton Hauck and Berghoff Grill, Inc.

By the contracts Hauck agreed to furnish eight men, musicians who were members of a local union, to play during a seven-day, 42 hour week, for the sum of $330 weekly. Both contracts referred to Berghoff Grill, Inc. as the employer. The second contract recited that it was an "agreement of employment" with Berghoff, "the employer of 8 men," and that "the individual musicians are the employees," and that "Any payment by the employer to the musician's representative shall be as their agent for distribution among them."

Both contracts provided that the musicians must be members of the American Federation of Musicians. The eight musicians were members of the Federation, the constitution and by-laws of which provided, that "All leaders or contractors shall be responsible for the good standing of all musicians performing in their employ," and included a prohibition that "For theatrical engagements of every character the management can contract with the leader only; the members in turn contracting with the leader." The instant contracts provided that nothing in the contracts shall be so construed as to interfere with any obligation which the musicians owe to the American Federation of Musicians.

Prior to 1938 and after 1939, the "Happy" Hauck Orchestra, as a musical unit, performed, under the leadership of Hauck, at various places in the country, but during certain periods in 1938 and 1939 it performed at the Gardens. Hauck, as leader, furnished his own musicians, and the members of the orchestra furnished their own instruments, music, and other paraphernalia. For the services of the orchestra, Hauck received $330 weekly. The payments were made by check. Berghoff carried no workmen's compensation insurance covering Hauck or any member of his orchestra, and gave no directions of any kind to Hauck or to any member of the orchestra, nor was any attempt made to exercise any control whatsoever over Hauck or any member of the orchestra. Berghoff's payroll records did not include the name of Hauck or any member of his orchestra, but they did include the names of all other persons rendering services in the Gardens and they were carried on the records as employees and were paid in cash.

The District Court made separate findings of fact upon which he stated his conclusions of law. He was of the opinion that Hauck was an independent contractor and that the musicians were his employees.

Appellant concedes that musicians performing at owners' establishments have been held not to be employees of the owners of the establishments, Hill Hotel Co. v. Kinney, 138 Neb. 760, 295 N.W. 397; Unemployment Compensation Commission v. Mathews, 56 Wyo. 479, 111 P.2d 111; Bartels v. Birmingham, D.C., 59 F.Supp. 84, and cases cited therein, and admits, that if this record reveals the Hauck Orchestra to be substantially similar to "Griff Williams and His Orchestra" and the relations between Hauck and Berghoff be comparable, the judgment ought to be affirmed.

In the Williams case, 7 Cir., 126 F.2d 129, the Government contended that Williams was the employer of the musicians. Williams urged that he was an employee, not an independent contractor. The record disclosed that Williams was the leader of a dance orchestra known as "Griff Williams and His Orchestra." He assembled and engaged the musicians; they performed at some twenty-two establishments, and were paid by Williams. Williams had a booking agent, which was empowered to, and did, enter into contracts with the establishments to furnish "Griff Williams and His Orchestra" at a certain time and place for an agreed price. There was no evidence and, consequently, no finding that the establishments had the right to hire and discharge the musicians. Each of the contracts incorporated by reference the rules and regulations of the American Federation of Musicians in which the establishment was referred to as the "employer" and in the by-laws of the Federation, Williams was referred to as "employing the sidemen." (The members of the orchestra are known in the trade as "sidemen.") The sidemen furnished their own instruments.

In disposing adversely Williams' contention that he was not the employer of the musicians, this court, at page 131, said: "We think the record discloses without question that the right to hire and discharge was the sole prerogative of plaintiff." Thus it is clear that the controlling factor in the Williams case was the fact that the establishment at which the services were performed had not the right to control and direct the individual musicians who performed the services. In our case, Berghoff had not the right to direct "the

details and means by which the result is accomplished." Berghoff had not the right to say "what shall be and how it shall be done." Although there are a few factual differences, this case is not distinguishable in principle from the Williams case, and since there was evidence furnishing a substantial and reasonable basis for the findings and conclusions of the District Court, the judgment must be affirmed. It is so ordered.